UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL C. CHUPA, JENNIFER J.
CHUPA, CHUPA AND ASSOCIATES, P.C.,
D. TODD WILLIAMS and D. TODD
WILLIAMS, P.C.,

    Plaintiffs,

v.                                     Case No. 06-12584

CAROLYN KURKOWSKI MOCERI, JAMES
R. FOUTS, MICHAEL J. WIECEK, MARY M.
KAMP and CITY OF WARREN,

    Defendants.
                                      /

**OPINION AND ORDER GRANTING DEFENDANTS'
"MOTION FOR SUMMARY JUDGMENT"**

Pending in this action, the core of which seeks to characterize as unconstitutional a fee-payment dispute between Plaintiff lawyers and the municipal entity responsible for both funding and approval of payments, is Defendants' motion for summary judgment. The court has reviewed the parties' briefs and concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendants' motion with respect to Plaintiffs' federal claims. Accordingly, the court will also decline to decide or otherwise exercise jurisdiction over Plaintiffs' state claims.

**I. BACKGROUND**

Plaintiff Michael C. Chupa is an attorney licensed in Michigan whose practice includes court-appointed criminal cases in the 37th District Court in Warren, Michigan ("Warren District Court"). (Michael Chupa Dep. at 6, Defs.' Ex. A.) ("M. Chupa Dep.")

Plaintiff Jennifer Chupa, his younger sister, is also an attorney whose practice includes court-appointed work for the same court.  (Jennifer Chupa Dep. at 6-7, Defs.' Ex. B.) ("J. Chupa Dep.")  Plaintiff D. Todd Williams, a friend of Michael C. Chupa, similarly receives court-appointed cases in the same court.  (Williams Dep. at 7-8, 12, 15-16, Defs.' Ex. C.)

Michael W. Chupa, father of Michael C. and Jennifer, is a member of the Warren City Council, (M. Chupa Dep. at 27.),[1] who came to serve on that body after his son and daughter had begun receiving appointments and discharging court-appointed duties.  The Council is a local legislative body, responsible for ordinances, budgets (including that of the Warren District Court) and zoning petitions.  (*Id.* at 28; Fouts Dep. at 84, Defs.' Ex. G.)  Defendant James R. Fouts is President of the Council and Defendants Carolyn Kurkowski Moceri, Michael J. Wiecek and Mary M. Kamp are Members.  For budgetary purposes only, the district court is in the position of a department of the city, which means that the Council must approve the Warren District Court's budget.  (Fouts Dep. at 84, Defs.' Ex. G.)

Plaintiffs allege that the genesis of this case is a political dispute between Councilman Chupa and the individual Defendants, which led to putatively retaliatory conduct by Defendants aimed at Plaintiffs.  At a February 22, 2005 Council meeting, Councilman Chupa and other members of the Council questioned whether Defendant Fouts, who is employed as a teacher for Warren Consolidated Schools, violated a city ethics policy by voting on issues related to the schools, including approval of bills.

---

[1] Unless otherwise noted, the court will refer to Michael W. Chupa as "Councilman Chupa."  At times, the court will refer to his son, Michael C. Chupa, as "Chupa."

(Compl. at ¶ 27.)² Councilman Chupa stated that he always recuses himself from voting on bill approvals for the court-appointed work of his children. (*Id.*) As a result of this situation, Plaintiffs allege that the individual Defendants:

> thereupon began taking wrongful, unjustified and retaliatory actions against City Council member Michael W. Chupa's children, plaintiffs Michael C. Chupa and Jennifer Chupa, and those with whom they were associated, in an effort to cause injury to plaintiffs as well as City Council member Michael W. Chupa.

(*Id.* at ¶ 28.)

Specifically, Plaintiffs allege that Defendants in their official capacities obstructed payment for the Chupas' court-appointed work and zoning requests for two clients of Michael C. Chupa and Williams. Regarding the latter, the five Council members must approve petitions for rezoning. (M. Chupa Dep. at 37-40, Defs.' Ex. A.) The petitions originate in the City Planning Committee and, if approved, move to the Planning Commission for public hearing. (*Id.*) If successful, the Council holds a hearing and a vote. (*Id.*) A petitioner may appeal the Council's denial to the Zoning Board of Appeals or in an action filed in state circuit court. (*Id.*)

In particular, Plaintiffs present the difficulties that Michael C. Chupa and Williams had while representing White Castle in its bid for rezoning. Chupa explained to his client when he was retained in 2004 that he could handle the matter through the planning phases but that, when it went before the Council, his father would have to abstain from voting. (*Id.* at 41, 43-44.) To allow full Council consideration with the vote

---

²Plaintiffs present several Council meeting minutes and transcripts. Detailed exposition of that record evidence is not necessary, particularly where the facts are not in dispute, where the court is viewing the record in the light most favorable to Plaintiffs or where the court is merely summarizing Plaintiff's allegations.

3

of his father, Chupa recommended to his client that only Williams appear for the hearing before the Council, with Chupa handling the rest of the case. (*Id.* at 75.) Williams appeared at the February 22, 2005 hearing and, with the vote of Councilman Chupa, White Castle's rezoning petition was approved 5-4. (Williams Dep. at 40-41, Defs.' Ex. C.)

On March 8, 2005, the Council reconsidered the petition and voted to rescind its approval and table the rezoning petition. (3/8/05 Tr. at 10-18, Pls.' Ex. 4.) Before this action, there was discussion about whether the location at issue would be safe for a White Castle, given its proximity to a busy intersection and a school, as well as previous experience with a different fast food restaurant there. (*Id.* at 2-10.) After tabling the issue again, (3/22/06 Meeting Minutes, Pls.' Ex. 5), the Council voted on the merits on April 26, 2005 to reject the rezoning petition, (4/26/06 Meeting Minutes at 21, Pls.' Ex. 6). The Council again discussed, in addition to procedural issues, the impact that a White Castle restaurant at that location would have on the health, safety and well-being of the nearby schoolchildren. (*Id.* at 17-20.) White Castle did not appeal the Council's vote. (M. Chupa Dep. at 84, Defs.' Ex. A; Williams Dep. at 50-51, Defs.' Ex. C.) According to the owner of the investment company White Castle hired for this development project, due to the rescission, Chupa received only a portion of the fees, Williams was paid nothing and neither has done any additional work for White Castle or for the investment company. (Aff. of George Cueter at ¶¶ 1, 4 29-31, Pls.' Ex. 7.)

The other rezoning matter at issue involves Michael C. Chupa and Williams's representation of Ferlito Construction. Similarly, Chupa guided this project through the

4

planning phases and then Williams appeared at the Council hearing on May 24, 2005. (M. Chupa Dep. at 63-64, 81-82, Defs.' Ex. A.)  The Council's printed agenda indicated that Chupa was the petitioner, which led some members of the Council and the public to raise concerns about a conflict of interest for Councilman Chupa.  (5/24/05 Tr. at 2, 6, 18-19, 32-35, 51-55; Pls.' Ex. 8.)  The Council debated the matter, voted to exclude Councilman Chupa from voting and denied the rezoning petition.  (*Id.* at 54, 57.)  Michael C. Chupa assisted Ferlito with an appeal and obtained a use variance, allowing the project to move forward.  (M. Chupa Dep. at 91, Defs.' Ex. A.)

The Council also approves and pays the bills of the Warren District Court, which includes bills for court-appointed attorney fees.  (Fouts Dep. at 84.)  The judges make the appointments independently and the attorneys submit their bills to the appointing judge when the matter is concluded.  (M. Chupa Dep. at 20-21, 121.)  The judge reviews the bills and then enters an order for payment, which goes with supporting documentation to the Council for payment approval.  (*Id.* at 121-22.)  Before the alleged dispute between Councilman Chupa and the individual Defendants, the Chupas never had a problem collecting payment for their court-appointed work.  (Compl. at ¶ 47.)

At the July 26, 2005 meeting, the Council failed to approve the Chupas' bills, reaching a tie vote with Councilman Chupa, as usual, abstaining.  (*Id.* at ¶¶ 44-47.)  These tie votes continued for several months.  (*Id.* at ¶¶ 48-57.)  Plaintiffs allege that Defendants made several slanderous statements at meetings and in the press during the impasse.  (*Id.* at ¶¶ 57-73.)[3]  As described below, the Council eventually approved

---

[3]Plaintiffs present copies of transcripts and press material, which, pursuant to the court's analysis below, do not require detailed summary.

5

payment. Defendants counter that they merely debated in good faith the meaning of the city's anti-nepotism policy and that they saw a conflict of interest or an appearance of impropriety in approving payment of bills for the children of a member of the body to which the Warren District Court is beholden for its operating budget. Defendants' brief reproduces Section 7.27 of the charter of Warren, which is an anti-nepotism policy that Councilman Chupa co-wrote. (Defs.' Br. at 12; M. Chupa Dep. at 140, 143, Defs.' Ex. A.)

Plaintiffs filed suit on June 12, 2006, alleging a number of federal and state claims. Counts I through III allege federal causes of action pursuant to 42 U.S.C. § 1983 for denials of (1) procedural due process, (2) substantive due process and (3) equal protection. Under state law, Plaintiffs assert a number of claims individually and collectively. In Count IV, Plaintiffs allege libel and slander. Finally, Michael C. Chupa and Jennifer Chupa assert separate claims of breach of contract (Counts V-VI), unjust enrichment (Counts VII-VIII) and "Breach of Contract-Account Stated" (Counts IX-X).

After the filing of the suit, the Council approved lump-sum payment to the Chupas for past court-appointed work. On August 23, 2006, the city issued checks to Michael C. Warren for $17,525 and to Jennifer Chupa for $21,762.50. (Images of Checks, Defs.' Exs. E-F; J. Chupa Dep. at 12-13.) Statements attached to the checks indicate that they are for court-appointed work and state "various" in the column calling for the invoice numbers. (Images of Checks.) The Chupas averred that they therefore do not know for which cases they were paid. (J. Chupa Dep. at 17; M. Chupa Dep. at 125-26.) Michael Chupa estimates that he is still owed $3,000 to $7,000. (M. Chupa

Dep. at 127.) Though the amount he received was only $400 less than his demand in the complaint, excluding costs, interest and fees, (Compl. at ¶ 117), he did additional work on some cases that has generated new bills "working their way through the system," (M. Chupa Dep. at 127). Jennifer Chupa received about $4,000 less than she demands, (Compl. at ¶ 124), and she averred that she is "still owed money," (J. Chupa Dep. at 18). She confirmed that she and her brother continued to receive court-appointed work even when they were not being paid, and that the most recent appointment arrived just before her deposition in January 2007. (*Id.* at 12-13, 19.) Since August 2006, the Council has not refused to pay for any of the Chupas' court-appointed work. (*Id.* at 20-21.)

## II. STANDARD[4]

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

---

[4]Because the court's analysis goes beyond the pleadings and relies on record evidence, the court will not resolve Defendants' motion on Federal Rule of Civil Procedure 12(c) grounds, which Defendants also present in their brief as a basis for granting their motion.

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from those facts in a manner most favorable to the nonmoving party. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). The court is not to weigh the evidence to determine the truth of the matter, but must determine if there is a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III.  DISCUSSION

### A.  Plaintiffs' Federal Claims

### 1.  Denial of Procedural Due Process

Plaintiffs must establish a constitutionally protected liberty or property interest and show that such an interest was deprived without appropriate process.  *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005) (citing *Board of Regents v. Roth,* 408 U.S. 564, 569-70 (1972); *LRL Props. v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1108 (6th Cir.1995)).  "Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process."  *Hamilton v. Myers,* 281 F.3d 520, 529 (6th Cir. 2002).

Concerning the denied rezoning petitions, the court has difficulty identifying what property or liberty interest Chupa and Williams had *personally*.  The hallmark of property, for instance, "is an *individual* entitlement grounded in state law, which cannot be removed except for cause."  *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433 (1982) (emphasis added, quotation omitted); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive *individuals* of 'liberty' or 'property' interests . . . ." (emphasis added, citations omitted).  The zoning rights at issue impacted the clients, and not the attorneys themselves.  Defendants also did not prevent either attorney from exercising his right to practice law.  Indeed, Chupa averred that he has a practice of informing clients of the fact that his father is a member of the Council and, in light of that

information and potential limitation, asking if the prospective client was still interested in his services. Whatever consequential impact there was on the business of Chupa and Williams, those effects are, as a matter of law, too attenuated to give rise to potential liability for Defendants under 42 U.S.C. § 1983.

Even if the court were to reach the second step of the analysis, the record raises no material question of fact concerning the process afforded to rezoning petitioners. Plaintiffs admit that White Castle never appealed the Council's denial of its petition. The Council's action was but one step in the process, and not even a final step. The Council discussed legitimate safety issues. While it is not the place of this court to decide the merits of White Castle's petition, it is clear that the Council gave it full consideration, which is all the process that any petitioner would be due. Further, the parties do not dispute that Ferlito availed itself of its right to appeal, eventually obtaining a favorable outcome. Chupa represented Ferlito in that appeal. As such, the impact of the Council's actions on the practice of Chupa and Williams appears negligible. Defendants adequately provided notice and an opportunity to be heard, the touchstones of the right to procedural due process. *See, e.g., Thompson v. Ashe,* 250 F.3d 399, 407 (6th Cir. 2001).

The denial of the Chupas' court-appointed fees presents a stronger, but ultimately unavailing, claim. They clearly had a property interest in money for court-appointed work that the Warren District Court duly approved. Denial of that money is tantamount to a fine, where a plaintiff would have a recognized property interest. *See, e.g., Herrada v. City of Detroit,* 275 F.3d 553, 556 (6th Cir. 2001). They had a legitimate claim of entitlement to those fees.

10

The more difficult question is whether the Chupas had no adequate procedure for demanding payment. Because the bill approval requests originated with the Warren District Court, the Council's hearings were actually at the request of the court albeit for the ultimate financial benefit of the attorneys.[5] The meetings were open to the public, which are often invited to make comment. During the time period when the Chupas' fees were not being paid, there is no evidence that either appeared at a Council meeting to air a grievance or that the Chupas otherwise petitioned the Council for relief. "[T]he Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged." *Logan*, 455 U.S. at 433. As such, the Chupas may not base their case on the fact that they never took advantage of the opportunity to present their cases on the merits.

Further, while there is no formal appeal procedure like for rezoning petitions, there is no bar to the Chupas' ability to file an action in state court. In fact, their complaint asserts alternative state claims for breach of contract and unjust enrichment. In addition, relief in the form of a writ of mandamus (or its modern analog) is available in Michigan state court. Such an action, in essence and if successful, would have the effect of compelling the Council to perform its duty and authorize payment. In addition, to the extent that the Warren District Court – a subsidiary arm of Michigan's "one court of justice"[6] – might be construed as the non-paying party, Michigan has a Court of Claims that exercises jurisdiction over claims "against the state and any of its

---

[5]The court is mindful, however, that orderly payment of court-appointed fees is a component of effective and efficient administration of justice, no doubt an important interest for the Warren District Court, the Council, the bar and, ultimately, the public.

[6]Mich. Const. 1963, art. 6, § 1

11

departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419. Under the circumstances, with adequate state remedies available, federal intervention is not needed. *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001).

In *Lujan*, the issue also concerned a public body withholding payment under a contract to a private party, who challenged the withholding as a denial of procedural due process. Under California law, the State may withhold payment to a contractor on a public works project if a subcontractor on the project fails to meet certain statutory requirements. *Id.* at 191. The contractor, in turn, is permitted to withhold similar sums from the subcontractor. *Id.* The plaintiff in *Lujan* challenged the fact that the California law provided for no hearing before or after the withholding of funds. *Id.*

The Supreme Court assumed without deciding that the withholding of funds occurred under color of law and that the plaintiff therefore had a property interest at stake. *Id.* at 195. In deciding whether the plaintiff received all the process that it was due, the Court concluded that the interest at stake "can be fully protected by an ordinary breach-of-contract suit." *Id.* at 196.

In many ways, the Chupas stand in the shoes of the subcontractor in *Lujan*, with the Warren District Court as the contractor plaintiff and the Council as the government defendants. Under the holding of *Lujan*, the Warren District Court's dispute with the Council should be resolved as a simple breach of contract suit in state court. By logical implication, any rights of the Chupas as subcontractors would therefore find their remedy in the same forum. Further, the Warren District Court and the Chupas had opportunity to request a hearing before the Council, which is more process than the contractor was afforded in *Lujan*, where the statute made a state action the exclusive

remedy.  *Id.* at 198.  The record reveals that the Warren District Court stated its case informally, to the extent that the chief judge, who was once the city attorney, spoke to individual Council members and urged them to follow the contract and a court order to pay the Chupas.  (Dep. of Judge Walter Jakubowski at 33-37, 44-45, Pls.' Ex. 13.)  He did not believe that paying the Chupas would violate the anti-nepotism policy.  (*Id.* at 45.)

In addition, the court is not persuaded, as Plaintiffs argue, that appearing before the Council would have been futile and that their claim is therefore immediately cognizable.  *Nasierowski Bros. Inv. Co. v. Sterling Heights*, 949 F.2d 890, 893 (6th Cir. 1991).  In *Nasierowski*, the court stressed that the city council committed an *ultra vires* act by convening in executive session, deviating from the typical zoning process and "subverting the purpose of the duly conducted notice and comment process."  *Id.* at 894.  The plaintiff, whose land was summarily rezoned, thus had an "immediately sustained and concretely felt" injury, which did not require a "final" decision before he could file suit.  *Id.*  In this case, the Council acted in the ordinary course of business,  not in executive session and not in violation of established procedure.  While Plaintiffs may object on the merits to the rather unprecedented decisions to rescind an approved rezoning petition and to withhold payment of attorney fees, objections to the substance of a decision do not implicate the process by which that decision was reached.  In terms of the process, the Council did not, as in *Nasierowski*, change the procedure mid-stream.  Further, even if seeking redress from the Council was unrealistic, the question is not the outcome so much as whether the Council would have granted sufficient

process. Moreover, there are other state fora where the Chupas could seek relief.[7] As such, this case, whatever its underlying merits, has no federal dimension.

Finally, the court is concerned that the lump-sum payments to the Chupas after the filing of this suit may render their legal claims moot. Neither side has presented detailed accounting concerning what fees, if any, remain outstanding and, further, what interest might be due. In the case of Michael C. Chupa, there is but a $400 difference between what he demands in the complaint and the payment he received, with additional amounts, according to his deposition testimony, originating in later work that appears to have taken place after the relevant time period alleged in the complaint. Similarly, while the monetary difference for Jennifer Chupa appears larger, she also did not specify in her deposition if the amounts owed fall within or outside of the relevant time frame. The court therefore doubts what would be left for this tribunal to decide. The same concern underlies, or perhaps looms over, Plaintiffs' other federal claims.

### 2. Denial of Substantive Due Process

Substantive due process goes beyond procedural due process to protect individuals against arbitrary action of government. *See, e.g.*, *West Cost Hotel v. Parrish*, 300 U.S. 379 (1937); *County of Sacramento v. Lewis*, 523 U.S. 833 (1998); *Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992). In other words, certain government action, regardless of the process afforded, can run afoul of an individual's rights. Accordingly, substantive due process claims typically involve fundamental rights and government actions that "shock the conscience." *Midkiff*, 409 F.3d at 769

---

[7]This analysis applies equally to the rezoning issue, as Chupa and Williams might, for instance, have advanced a theory of tortious interference in a separate state action.

(quotation omitted).  To defend against such claims, the governmental unit need only show that the policy implemented or enforced was rationally related to a legitimate government interest.  *Id.*  This "plausible policy reason," as it is often called, *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992), need not have actually motivated the decisionmaker.  *FCC v. Beach Commc'n, Inc.*, 508 U.S. 307, 315 (1993).

Plaintiffs cannot meet the high standard required.  First, the rights at stake, pursuant to the above analysis, are not clearly fundamental.  Plaintiffs have presented no case law stating that analogous facts shock the conscience.  Further, whatever the political motivations were, there is no question of fact concerning whether legitimate policy determinations supported denying the rezoning petitions.  Health, safety and public welfare were discussed in conjunction with the White Castle petition.  Concerning payment of court-appointed attorney fees, the record viewed in the light most favorable to Plaintiffs fails to demonstrate that a good faith interpretation of the anti-nepotism provision of the charter played no role.  Where such a policy is at stake, courts have uniformly applied rational basis review and affirmed the policy.  *See Beecham v. Henderson County*, 422 F.3d 372, 378 (6th Cir. 2005) (citations omitted).  The record in this case presents no compelling basis to depart from the established rule.

Even if Defendants acted with no rational basis, the court again points out that the problems of mootness would likely provide a sufficient basis for the court to avoid deciding this as a *federal* claim.

### 3.  Denial of Equal Protection

This claim overlaps considerably with Plaintiffs' substantive due process claim.  Equal protection guarantees prohibit "distinctions which either burden a fundamental

right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (citations omitted). As the Supreme Court has stated succinctly, there is a "general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Plaintiffs' equal protection claim must fail for several reasons.

First, as discussed above, the court found that no fundamental rights are implicated in this case. Second, Plaintiffs have failed to identify themselves as members of any protected or suspect class. There is, certainly, no Children-of-Elected-Officials class (to say nothing of mere associates of such children) for purposes of federal equal protection analysis. Further, Plaintiffs have cited no case law upholding a challenge to an anti-nepotism policy that was decided on equal protection grounds. Finally, the record presents no evidence of similarly situated individuals who were treated differently. The court is aware of no evidence of other attorneys in Warren who fall under the anti-nepotism provision of the charter. Therefore, the court cannot compare the experience of Plaintiffs to anyone who is similarly situated.

### 4. Municipal Liability

Pursuant to the above analysis, the court is also persuaded that there are no viable federal claims against the City of Warren. The briefing has not focused upon this issue, but it is clear that, to the extent that the federal theories of recovery do not apply to the individual Defendants, those theories are equally infirm vis-a-vis Defendant City of Warren.

### B. Plaintiffs' State Claims

While the court possesses the discretion to exercise jurisdiction over Plaintiffs' state law claims, it is appropriate now for the court to decline exercising jurisdiction over those claims. A district court may decline to exercise jurisdiction over claims allowed in federal court pursuant to 28 U.S.C. § 1367(a) if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c). The court, pursuant to the above analysis, has dismissed all federal claims in this case over which it had original jurisdiction. Considerations of judicial economy do not weigh in favor of further proceedings resolving purely state law claims. *See e.g. United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966) ("[if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.") The court will therefore decline to reach Plaintiffs' remaining claims under state law.

### IV. CONCLUSION

IT IS ORDERED that Defendants' Motion "for Summary Judgment" [Dkt # 24] is GRANTED.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: April 6, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 6, 2007, by electronic and/or ordinary mail.

        S/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522